1 U.S. 77
 1 Dall. 77
 1 L.Ed. 44
 NATHAN
v.
VIRGINIA.
 No. ___.
 September Term, 1781
 
 A foreign attachment was issued against the commonwealth of Virginia, at the suit of Simon Nathan: and a quantity of clothing, imported from France, belonging to that state, was attached in Philadelphia.
 The delegates in Congress from Virginia, conceiving this a violation of the laws of nations, applied to the supreme executive council of Pennsylvania, by whom the sheriff was ordered to give up the goods.
 The council for the plaintiff, finding that the sheriff suppressed the writ, and made no return of his proceedings, obtained, September 20, 1781, a rule that the sheriff should return the writ, unless cause was shown
 They contended that the sheriff was a ministerial officer; that he could not dispute the authority of the court out of which the writ issues, but was bound to execute and return it at his own peril, 6 Co. 54.
 That those cases in England, where the sheriff was not compelled to return writs issued against ambassadors or their retinue, depended upon the stat. 7 Ann. c. 12. which did not extend to this state.
 The Attorney General, on the part of the sheriff, and by direction of the supreme executive council, showed cause, and prayed that the rule might be discharged.
 He premised, that though the several states, which form our federal republic, had, by the confederation, ceded many of the prerogatives of sovereignty to the United States, yet these voluntary engagements did not injure their independence on each other; but that each was a sovereign, 'with every power, jurisdiction, and right, not expressly given up.'
 He then laid down two positions. First: that every kind of process, issued against a sovereign, is a violation of the laws of nations; and is in itself null and void. Secondly: that a sheriff cannot be compelled to serve or return a void writ.
 1. The first point he endeavoured to prove, by considering, first the nature of sovereignty: and, secondly, the rules of law, relative to process issued against ambassadors, the representatives of sovereigns.
 He said, that all sovereigns are in a state of equality and independence, exempt from each other's jurisdiction, and accountable to no power on earth, unless with their own consent.
 That sovereigns, with regard to each other, were always considered as individuals in a state of nature, where all enjoy the same prerogatives, where there could be no subordination to a supreme authority, nor any judge to define their rights, or redress their wrongs.
 That all jurisdiction implies superiority over the party, and authority in the judge to execute his decrees: but there could be no superiority, where there was a perfect equality no authority, where there was an entire independence.
 That the king of England, as sovereign of the nation, is said to be independent of all, and subject to no one but God: and his crown is stiled imperial, on purpose to assert that he owes no kind of subjection to any potentate on earth. No compulsory action can be brought against him, even in his own courts.
 That a sovereign, when in a foreign country, is always considered by civilized nations, as exempt from its jurisdiction, privileged from arrests, and not subject to its laws.
 Hence this inference was drawn, that the court having no jurisdiction over Virginia, all its process against that state, must be coram non judice, and consequently void. 1 Vatt. p. 2. 133. 2. Vatt. 158. 1 Blackft. 141. 5 Bac. 450.
 It was then observed, that there being no instance in our law books, of any process against a sovereign, it was proper to consider the rules of law relative to process against their representatives.
 The statute of Ann was read, with the history of the outrage that gave birth to it; which act declares that all process against the person, or goods, or domestics of an ambassador, shall be null and void, and all concerned in issuing or serving it, should be punished as infractors of the laws of nations.
 That this statute was not introductory of any rule, but barely declaratory of the laws of nations. That there was nothing new in it, except the clause prescribing a summary mode of punishment. That it was a part of the common law of the land before, and consequently extended to Pennsylvania. 4 Blackft. 67. 3 Burr. 1480. 4 Burr. 2016.
 Hence it was concluded, that if process against an ambassador be null and void, a fortiori, shall it be void if issued against a sovereign.
 That the true reason of the minister's exemption from process is the independence and sovereignty of the person he represents. And although by engaging in trade, he may so far divest himself of his public character, as to subject these goods to attachment, yet in every case where he represents his master, his property is sacred. But a sovereign cannot subject himself by implication: he must do it expressly.
 That though the goods of a sovereign, as well as of an individual, might be liable for freight, or duties, or subject to forfeiture; yet in those cases, there was a lien on the goods, they were answerable, and the process was in rem: in this case, it was in perfonam; and the goods were attached merely to compel the party's appearance to answer the plaintiff's demand. And no sovereign would submit to the indignity of doing this.
 Hence it was inferred that the writ was a mere nullity.
 II. Upon the second point, authorities were read to explain the case produced by the plaintiff's council, and to show a distinction between an erroneous and a void writ. That the sheriff was bound to execute and return the writ, although erroneous, if the court had jurisdiction. But when the court had no jurisdiction, the writ was void, and the sheriff was a trespasser if he dared to obey it; a void authority being the same as none. That in England, the sheriffs were never obliged to return a writ, if upon showing cause, it appeared that the defendant was a public minister, or one of his domestics. 5 Bac. 431. Salk. 700. 2 Barnes. 1 Wils. 20.
 That suppressing the writ was not making the sheriff judge, because he was obliged to assign a reason for so doing: and on the legality of that reason the court was now to determine.
 He added, that if the sheriff had attached the goods, he was liable to punishment, and to compel him to return his proceedings, was to oblige him to put his offence upon record, and to furnish testimony against himself.
 He finally observed that the writ was void, or it was not. If void, the sheriff need pay no attention to it: if not void, he was obliged to execute it at all events; and if so, these inconveniencies would follow. That any disaffected person, who happened to be a creditor of the United States, might injure our public defence, and retard or ruin the operations of a campaign; that he might issue an attachment against the cannon of General Washington, or seize the public money designed for the payment of his army. That the states united or several, would never submit to put in special bail (which must be done to prevent judgment) and to answer before the tribunal of a sister state.
 That the plaintiff was under no peculiar inconvenience. Every creditor of this state or of the United States lay under the same. If his demand was just, Virginia would, upon application, do what was right; if not, and flagrant injustice was done him, he might (if a subject of this state, and entitled to its protection) complain to the executive power of Pennsylvania.
 
 
 1
 He concluded with observing on the importance of suppressing such measures as the present, at their first appearance, and of preserving the rights of sovereign states inviolate and prayed that the rule might be discharged.
 
 
 2
 The counsel for the plaintiff insisted, that though Virginia was a sovereign state, yet, this ought not to exempt her property in every case from the laws and jurisdiction of another state. That sovereignty should never be made a plea in bar of justice: and that the true idea of prerogative, was the power of doing good, and not, as it had sometimes been expressed, 'the divine right of doing ill.'
 
 
 3
 That every person, and all property within this state, was subject to its jurisdiction, by so being within it, except a sovereign power, and the representative of a sovereign power, with his domestics and effects, which he holds as representative.
 
 
 4
 That if an ambassador engages in trade, his property so engaged is liable to attachment, Val B. IV sect. 114. and if a sovereign state turns merchant, and draws or accepts bills of exchange, its property ought in like manner to be subject to the law merchant, and answerable in the state where it happens to be imported.
 
 
 5
 That sovereignty is better represented by persons than things: and as any or all the citizens of Virginia would be amenable to the jurisdiction of this state, if they were to come within its bounds, so there is no reason why property brought here should not be attached as well as the citizen arrested.
 
 
 6
 That one sovereign may lay duties upon the goods of another: and this appears to have been the sense of Congress, by their expressly stipulating in the articles of confederation, that no duties should be laid by one state, on the property of another.
 
 
 7
 That the goods, which were attached, were certainly liable for their freight: so if they had been imported contrary to law, they were subject to forfeiture: process against them might issue out of this court, and jurisdiction over them be exercised, the sovereignty of Virginia notwithstanding.
 
 
 8
 That if a vessel belonging to Virginia, should be taken, as prize retaken, and labelled here, Virginia must submit her claim to the decision of the admiralty of Pennsylvania, and could not claim an exemption, on account of her sovereignty.
 
 
 9
 That a sovereign state may wave its rights and by the very act of importing merchandize, it subjects itself to the jurisdiction of the country.
 
 
 10
 That all property in this state is under the protection of the government, and therefore should be answerable in its turn, and amenable to its laws.
 
 
 11
 That the statute of Ann, though declaratory, is only declaratory of the ideas which that parliament entertained of the laws of nations. These were often erroneous, and could not be binding on us.
 
 
 12
 That whatever might be the case with regard to foreign ministers, by the articles of confederation, the delegates from Virginia were privileged only in their persons, and not in their goods: and as they represent the state, it was to be presumed, they enjoy every exemption that their sovereign expected or claimed.
 
 
 13
 They said, that whether Virginia was subject to, or exempt from, the jurisdiction of this state, in the present instance, was not the point now in question: it was only, whether the sheriff should or should not obey the command of the court.
 
 
 14
 That by the writ, he was directed to return it to the court, and he was not to withhold the process in contempt of this order, and to stifle the proceedings in their birth.
 
 
 15
 That the sheriff was to act under the judgment of the court, and if he had any doubt about the validity of the writ, he ought to return it. Then the court might, if cause was shown, quash it as illegal.
 
 
 16
 That his not being obliged to return process against ambassadors was owing to the statute of Ann: and this exemption was singular, and not to be extended here.
 
 
 17
 That though a writ might be void, where the court had no jurisdiction of the cause, or issued a writ, which they had no authority to issue; yet the cause here was trespass upon the case, of which the court may hold plea, and the process was a foreign attachment, which they certainly had authority to issue.
 
 
 18
 That to suffer the sheriff to suppress writs at pleasure, was establishing a dangerous precedent, which in future would be greatly abused.
 
 
 19
 That the questions upon which this cause depended, were important, and deserved the fullest consideration: and that an appeal from one tribunal to another, was the right and the security of the subject. But if the writ was now to be suppressed, there could be no record to be removed, and the plaintiff was left without remedy.
 
 
 20
 They finally observed, that this mode of applying to a court of judicature, to decide on the justice of the plaintiff's demand, was every way preferable to that proposed by the attorney general, of sending him to complain to the executive power, who could give him no redress, but by appealing to arms, and involving the state in a war.
 
 
 21
 They therefore prayed, that the rule might be made absolute.
 
 
 22
 The Court held the matter some days under advisement and at their next meeting, THE PRESIDENT delivered it as the judgment of the court
 
 
 23
 That the rule made upon the sheriff, to return the writ issued against the Commonwealth of Virginia, at the suit of Simon Nathan, should be discharged.'